IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | : | |
|---|---|---|
| **BRUCE FRAZIER,** | : | |
| Petitioner, | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 02-1472 |
| | : | |
| **JEFFREY BEARD, et al.** | : | |
| Respondents. | : | |

**Tucker, J.**                                                                                     **November 30, 2005**

### MEMORANDUM AND ORDER

Presently before the Court is the Report and Recommendation (the "R & R" or "Judge Welsh's Report") of United States Magistrate Judge Diane M. Welsh (Doc. 18) denying Petitioner Bruce Frazier's petition for *habeas corpus* relief (Doc. 1) and Petitioner's objections to Judge Welsh's Report (Doc. 20). Having conducted a *de novo* review of Judge Welsh's Report[1], this Court will adopt Judge Welsh's conclusion that Petitioner has presented no grounds warranting *habeas* relief.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Petitioner is serving a life sentence at a state correctional institution and presently requests federal habeas relief from this Court. Petitioner seeks relief from his state court convictions on grounds that his Sixth Amendment right to effective assistance of counsel was violated. Specifically, Petitioner argues that his counsel was ineffective because he failed to object to several jury instructions, which Petitioner argues impermissibly relieved the Commonwealth of its burden of proof at trial. Petitioner argues that this burden shifting denied him due process of law.

---

[1]This Court is required to review *de novo* those portions of Judge Welsh's Report to which the Petitioner has made specific objections. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).

**A. Trial Proceedings**

On November 1, 1998, Petitioner encountered, the decedent, Jamal Blackwell in the Sartain Courtyard of Richard Allen Homes in Philadelphia. Petitioner told Blackwell that he had seen his (Blackwell's) brother on his roof recently and accused Blackwell's brother of attempting to rob his house. The discussion quickly escalated into an argument. As the argument intensified, Petitioner witnessed one of Blackwell's friends put his hand on Blackwell's shoulder and say "don't shoot...there are too many people out here." Petitioner viewed this action as a threat.

Petitioner, knowing Blackwell to carry a gun, feared that Blackwell had a gun on this occasion. After seeing Blackwell, Petitioner drew a gun that he was carrying. When Blackwell suddenly moved, Petitioner struck him in the face with the gun. In reaction to being hit in the face, Blackwell put his hands in his pockets and turned around toward Petitioner. Petitioner began shooting. Petitioner, running backwards, fired one shot on the ground and seven others in the direction of Blackwell. Petitioner's shots struck Blackwell three times in the back. Petitioner fled the scene, but turned himself in a few days later.

At trial, the Commonwealth sought a first-degree murder conviction. Petitioner's counsel argued self-defense. Judge Jane Cutler Greenspan charged the jury on first-degree murder, self-defense and voluntary manslaughter. On May 20, 1999, in the Philadelphia County Court of Common Pleas, a jury convicted Petitioner of first-degree murder, 18 PA. CONS. STAT. § 2502(a), carrying a firearm without a license, 18 PA. CONS. STAT. § 6106(a), and possession of an instrument of crime, 18 PA. CONS. STAT. § 907. Judge Greenspan sentenced Petitioner to life in prison without parole on the murder charge, and lesser concurrent sentences of one to two years on the other counts.

**B. Appellate Proceedings**

Petitioner appealed his judgment of sentence to the Superior Court of Pennsylvania, arguing that he received ineffective assistance from counsel at trial. The underlying issues on appeal were whether the trial court's instructions to the jury were incorrect as a matter of law and whether several instructions impermissibly shifted the burden of proof onto Petitioner. Petitioner contended that the improper instructions denied him due process of law, and thus counsel should have objected to them. First, Petitioner argued that the trial court failed to mention factors that could negate malice or otherwise reduce murder to voluntary manslaughter in its instructions and responses to the jury. Second, Petitioner challenged the instructions the trial court did give on the grounds that they essentially made voluntary manslaughter an affirmative defense, requiring proof beyond a reasonable doubt. The challenged instructions indicated that "the absence of malice is the controlling element which reduces an unlawful killing to Manslaughter," and "if you find beyond a reasonable doubt that the Defendant actually believed the circumstances were such that they would have justified the killing if they had existed but that belief was unreasonable, then the Defendant may be found guilty of Voluntary Manslaughter." (R & R at 3, 8.) Petitioner argued that the former instruction and others like it were incorrect as a matter of law given that they require a finding of absolutely no malice to reduce an unlawful killing from murder to manslaughter when the jury need only have a reasonable doubt as to whether Petitioner killed with malice. Petitioner also argued that both instructions suggested that he had to prove facts beyond a reasonable doubt when in fact the burden of proof was with the Commonwealth.

The Superior Court analyzed the propriety of the instructions and concluded that the instructions as a whole were comprehensive in addressing the elements of various forms of criminal

homicide, including the element of malice and circumstances that could negate malice, and that the instructions were consistent with Pennsylvania law. Moreover, the court rejected Petitioner's argument that the challenged instructions impermissibly shifted the burden of proof, pointing to language throughout the approximately twenty pages of instructions indicating that the Commonwealth must prove the elements of each crime beyond a reasonable doubt. Because the instructions were found to be proper, counsel could not be considered ineffective for failing to object. Consequently, the Pennsylvania Superior Court affirmed Petitioner's convictions on September 12, 2000.

**C. Federal Habeas Petition**

Petitioner presently seeks a writ of habeas corpus from this Court pursuant to 28 U.S.C. § 2254.[2] This Court referred the petition to United States Magistrate Judge Diane M. Welsh, and on April 23, 2004 she provided a Report and Recommendation. Judge Welsh found that the challenged jury instructions were ambiguous as to the burden of proof because the instructions did not explicitly state where the burden lied. Upon an independent analysis of the instructions as a whole, Judge Welsh determined that they were not erroneous, nor did they impermissibly shift the burden of proof onto Petitioner. (R & R at 5-6, 8-11.) Furthermore, she noted that counsel cannot be ineffective for failing to raise a meritless claim. *Id*. at 6-7, 11. Finding herself in agreement with the Superior Court of Pennsylvania, Judge Welsh concluded that the Superior Court's adjudication of Petitioner's claims was not "contrary to" nor an "unreasonable application of" Supreme Court precedent. *Id*.

---

[2] The District Attorney for Philadelphia County has conceded that Petitioner has exhausted his state court remedies, therefore the petition is properly before this Court. (R & R at 2.)

Accordingly, Judge Welsh recommended that the petition be denied.[3]

Petitioner has filed timely objections to the Judge Welsh's Report, repeating arguments he made before the Pennsylvania Superior Court. Petitioner again argues that he was deprived due process of law by the trial court's erroneous and ambiguous jury instructions, and that he was ineffectively assisted by counsel given counsel's failure to object to the challenged instructions.

## II. STANDARD OF REVIEW

Petitioner is a state inmate seeking federal *habeas* relief from his state court convictions, thus the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), govern the consideration of this case. AEDPA provides that "an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted...unless the adjudication of the claim...resulted in a decision that was *contrary to*, or involved an *unreasonable application* of, clearly established Federal law, as determined by the Supreme Court of the United States." *Id.* (emphasis added).

AEDPA "modified" the roles of federal courts in reviewing habeas petitions filed by state prisoners. *Williams v. Taylor*, 529 U.S. 362, 403 (2000). Under AEDPA, this Court must review state court determinations on the merits only to ascertain whether the court reached a decision that was "contrary to" or an "unreasonable application of" clearly established Supreme Court law. *Marshall v. Hendricks*, 307 F.3d 36, 51 (3d Cir. 2002). AEDPA does confine the authorities on which district courts may rely in making this determination to the decisional law of the Supreme Court. *Williams*, 529 U.S. at 381-82. This Court may not review the state court opinion on a *de*

---

[3] Judge Welsh also recommended that the Court not grant a Certificate of Appealability ("COA") because jurists of reason would agree that Petitioner's claims lack even arguable merit. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

*novo* basis.

The Supreme Court has explained that the "contrary to" and "unreasonable application of" clauses in AEDPA have independent meaning. A district court may issue the habeas writ under the "contrary to" clause if "the state court applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than [the Court would] have done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002). The district court may grant relief under the "unreasonable application" clause if the state court "correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case." *Id.* (emphasis added). In an unreasonable application inquiry, the issue is whether the state court's application of clearly established federal law is objectively unreasonable. *Id.*

### III. *STRICKLAND V. WASHINGTON*

Petitioner seeks habeas relief based on the alleged ineffective assistance of his trial counsel. To prevail, Petitioner must establish that the Pennsylvania Superior Court's finding that his trial counsel was constitutionally effective is an unreasonable application of established Supreme Court law.[4] The Supreme Court outlined the standard for determining ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 668, 689 (1984).[5] The Court reasoned that constitutionally effective counsel is essential to a fair criminal trial in our adversarial system. *Strickland,* 466 U.S. at 685. Access to trial counsel's skill and knowledge is necessary so that criminal defendants have "ample opportunity to meet the case of the prosecution." *Id.* (quoting *Adams v.United States ex rel.*

---

[4] The question here is not whether Petitioner's counsel was ineffective *per se* for failing to object to several of the trial court's jury instructions; the Superior Court of Pennsylvania decided that issue. This Court must decide whether the Superior Court correctly applied the federal law to Petitioner's claims for relief when it decided that Petitioner's trial counsel was constitutionally effective.

[5] The *Strickland* test is considered clearly established law for AEDPA purposes. *Evert v. Beard,* 290 F.3d 500, 508 (3d Cir., 2002).

*McCann*, 317 U.S. 269, 275-76 (1942)).  To determine whether trial counsel was constitutionally effective, a state court must examine the two components, as outlined in *Strickland*.

First, the state court must analyze counsel's performance at trial.  For *Strickland* purposes, a state court only may find trial counsel's performance deficient if it was so improper that it undermines the proper functioning of the adversarial process and cannot be relied on to have produced a just result. *Strickland,* 466 U.S. at 687-88.  Here, Petitioner has the burden to prove that counsel's failure to object to the jury instructions fell below the standards of a reasonable, professional attorney.  Secondly, the court must answer whether counsel's allegedly deficient performance prejudiced the Petitioner's defense at trial.  Petitioner may show prejudice by establishing that trial counsel's errors were so serious that they deprived the defendant of a fair trial making the outcome of the trial unreliable.  *Id.* at 687.  Petitioner bears the burden of identifying the specific acts or omissions of counsel that were deficient.  *Id.* at 686-90.  It is not enough to merely identify potential areas of prejudice.  Petitioner must then demonstrate that these errors were so grave that they deprived him of a fair trial.  *Id.*  The Petitioner must show that there is a reasonable probability that but for the deficiency, the proceedings would have been different.  *Lockhart v. Freetwell,* 506 U.S. 364 (1993).  The Court need not address both the performance and prejudice prongs of the *Strickland* test if Petitioner has made an insufficient showing as to one of the requirements.  *Strickland,* 466 U.S. at 697.

Petitioner's *Strickland* claim is based on his trial counsel's failure to object to jury instructions (that he contends) were constitutionally infirm.  Petitioner argues that the jury instructions were incorrect statements of Pennsylvania law that unconstitutionally shifted the burden of proof to him at trial.  Petitioner reasons that his trial counsel should have objected to these

instructions. The Commonwealth disagrees, arguing that the instructions were not incorrect, merely ambiguous and that trial counsel did not object because a reasonable attorney (and jury) would not interpret the instructions as shifting the burden. The Pennsylvania Superior Court determined that Petitioner was not denied effective assistance of counsel because the jury instructions were not constitutionally infirm. Therefore, in order for Petitioner to prevail on his claim, he must show that the Pennsylvania Superior Court unreasonably applied *Strickland* when it determined that Petitioner's trial counsel's was not ineffective for failing to object to the challenged instructions and that counsel's failure to object prejudiced Petitioner at trial.

## IV. DISCUSSION

Petitioner brings two challenges to his trial counsel's reactions to the jury instructions. First, Petitioner argues that his trial counsel was ineffective for failing to object to the court's instructions regarding imperfect self-defense manslaughter. Pet.'s Mem. at 14. Secondly, Petitioner claims that trial counsel was ineffective for failing to object to the instructions pertaining to the proof required to find malice in order to secure a first-degree murder conviction. *Id*. at 18. In order to properly analyze *Strickland* claims, the Court must first determine the constitutionality of the jury instructions. The constitutionality of the instructions, determines whether counsel's failure to object fell below the Sixth Amendment standard of effectiveness.

The Supreme Court outlined the approach for determining the constitutionality of jury instructions in *Boyde v. California*, 494 U.S. 370 (1990). When evaluating challenges to jury instructions, courts must determine whether the instructions are indeed ambiguous or whether they are complete misstatements of the law. *See id*. at 380. If the instructions are ambiguous, the court must analyze them in context with the jury charge as a whole. *Id*. at 376. This analytical standard

is well settled in the Third Circuit. *See, e.g.*, *Smith v. Horn*, 120 F.3d 400, 411 (3d Cir., 1997). *See e.g., also Estelle v. McGuire*, 502 U.S. 62, 72 (1991); *Flamer v. Delaware*, 68 F.3d 736, 752 (3d Cir. 1995); *Kontakis v. Beyer*, 19 F.3d 110, 115-16 (3d Cir. 1994). When evaluating ambiguous jury instructions, there must be a "reasonable likelihood" that the jury applied the instructions in an unconstitutional manner in order to reverse a conviction. *Boyde*, 494 U.S. at 380. In the case before this Court, Petitioner Frazier must establish that the jury instructions were constitutionally infirm in order to prevail on his *Strickland* claims. If the instructions were constitutional, Petitioner's *Strickland* claim must fail. *See Moore v. Deputy Comm'r, SCI Huntingdon*, 946 F.2d 236, 245 (3d Cir. 1991) (denying an ineffective assistance of counsel claim for failure to object).

**A. Imperfect Self-Defense Instruction**

Petitioner's first *Strickland* claim involves the trial court's imperfect self-defense instruction to the jury. In Pennsylvania, imperfect self-defense manslaughter can negate a charge of murder. Imperfect self-defense exists if a jury finds that a defendant killed a victim with the unreasonable belief that he was entitled to use deadly force in self-defense. *See* 18 PA. CONS. STAT. § 2503(b). In such cases, the jury must convict that defendant of voluntary manslaughter and not first degree murder *Commonwealth v. Smith*, 710 A.2d 1218, 1220 (Pa. Super. Ct. 1998). However, the Defendant does not have the burden to *prove* imperfect self-defense. *See Commonwealth v. Cropper,* 345 A. 2d 645, 649 (Pa. 1975). The Commonwealth has the burden to prove, beyond a reasonable doubt, that the Defendant was not acting in self-defense. *Id.*

At Petitioner's trial, the court instructed the jury that a verdict of voluntary manslaughter was proper if they found "beyond a reasonable doubt that [Petitioner] actually believed the circumstances were such that they would have justified the killing…but that belief was unreasonable." (Pet.'s

Mem. at 15) (quoting N.T. 8/19/99 at 82). This instruction, the Petitioner claims, created "a reasonable doubt burden" on his imperfect self-defense argument instead of the preponderance of the evidence standard usually required for such a defense. Petitioner contends that his trial counsel should have objected to this charge at trial because it was an incorrect statement of Pennsylvania law that shifted the burden to him at trial.

A review of the record shows that each step of the Superior Court's analysis was a reasonable application of Supreme Court precedent.[6] The court reviewed the statutory definitions of murder and voluntary manslaughter.[7] The trial judge correctly stated the elements of imperfect self-defense manslaughter. The challenged instructions are, at worst, ambiguous as to which party bears the burden of proof. However, mere ambiguity is not unconstitutional. *See Boyde,* 494 U.S. at 380. In order to successfully argue prejudice under *Strickland*, Petitioner must do more than just highlight ambiguity. *Boyde*'s reasonable likelihood standard is more than just a possibility that a juror would unconstitutionally apply the instructions. *Boyde,* 494 U.S. at 380. As stated above, Petitioner must establish that there is a reasonable likelihood that the jury applied the instruction in an unconstitutional manner. Petitioner cannot meet this standard.

---

[6] Although the Superior Court applied only the decisional law of Pennsylvania courts, its analysis is in line with *Boyde* and cannot be considered "contrary to" or an "unreasonable application of" Supreme Court precedent. *See Early v. Packer*, 537 U.S. 3, 8 (2002) (holding that a state court need not cite, nor even be aware of, Supreme Court law to be consistent with such law); *see also Lewis v. Johnson*, 359 F.3d 646, 659 n.11 (3d Cir. 2004).

[7] In Pennsylvania, "[a] criminal homicide constitutes murder of the first degree when it is committed by an intentional killing." 18 PA. CONS. STAT. § 2502(a). An intentional killing is evidenced by the use of "poison, or by lying in wait, or by any other kind of willful, deliberate and premeditated killing." 18 PA. CONS. STAT § 2502. "[M]alice is necessary for all degrees of murder, and it distinguishes murder from lesser types of homicide." *Commonwealth v. Gribble*, 703 A.2d 426, 431 (Pa. 1997). A criminal homicide constitutes voluntary manslaughter if at the time of killing the defendant "is acting under a sudden and intense passion resulting from serious provocation by the individual killed." 18 PA. CONS. STAT § 2503(a). As noted above, an imperfect claim of self-defense reduces a criminal homicide that would otherwise constitute murder to voluntary manslaughter if at the time of killing the defendant "believes the circumstances to be such that, if they existed, would justify the killing . . . but his belief is unreasonable." 18 PA. CONS. STAT § 2503(b).

This Court finds no reasonable likelihood that the jury applied the instructions unconstitutionally. The trial judge initially instructed the jury that the prosecution had the burden to prove every element of murder. (N.T. 5/19/99 at 67). Furthermore, the judge told the jury that they could conclude reasonable doubt from the evidence or lack of evidence presented with respect to each of the elements of the crime. *Id.* at 68. The judge also told the jury specifically that malice was an element of murder and that it (malice) could be inferred from the use of a deadly weapon. *Id.* at 76-77. Then the trial court instructed the jury twice that the Commonwealth had the burden to prove every element of murder beyond a reasonable doubt. *Id.* at 67-69. In fact, the trial court specifically instructed the jury that they must find the Petitioner not guilty if the Commonwealth does not meet its burden. *Id*. Moreover, the trial court specifically instructed the jury that the Commonwealth had the burden of proving that Petitioner did not act in justifiable self-defense. *Id*. at 85. The jury heard the challenged instructions after all of these instructions. Petitioner cannot meet either prong of *Strickland* because the instructions were not unconstitutional. Therefore, Petitioner's motion as to the imperfect self-defense charge is denied.

**B. Proof of Malice Instruction**

Petitioner also fails to prove that the Pennsylvania Superior Court unreasonably analyzed his trial counsel's conduct regarding the proof of malice instruction. In Pennsylvania, malice is an element of murder. *See Commonwealth v. Gribble*, 703 A.2d 426, 431 (Pa. 1997). The Commonwealth must prove malice, along with every other element of murder, beyond a reasonable doubt. Petitioner contests his trial counsel's failure to object to the trial judge's charge regarding the requirements to reduce a charge of murder to one of manslaughter. Specifically, Petitioner objects to the trial judge instructing the jury to consider an "absence of malice," as a condition for reducing

11

his murder charge to a conviction for manslaughter.[8] Petitioner contends that this instruction also shifted the burden to him, making absence of malice an affirmative defense. The malice instructions are not unconstitutional on their face because they did not tell the jury that the Petitioner had the burden to prove that he acted without malice. All three of the challenged instructions highlight for the jury that the lack of malice is what distinguishes murder from voluntary manslaughter and is a correct statement of Pennsylvania law. Still, the challenged instructions are ambiguous as to who has the burden of proof with regard to malice. Therefore, this Court must determine whether there is a reasonable likelihood that the jury in Petitioner's trial applied the malice instructions unconstitutionally.

Again, a review of the instructions as a whole reveals that Petitioner's trial counsel was not ineffective for declining to object to the instruction. The trial court correctly instructed the jury that the Petitioner was presumed innocent. (N.T. 5/19/99 at 67). The judge also told the jury that the Commonwealth had the burden to prove each element beyond a reasonable doubt. *Id*. Malice, the judge instructed, was an element of murder and could be inferred from the use of a deadly weapon. *Id*. at 76-77. Moreover, the judge instructed the jury that they could develop reasonable doubt from the evidence or lack of evidence. *Id*. at 68. Those instructions were clear. It is unlikely, given these instructions, that the jury shifted the burden of proving malice to the Petitioner. In addition to being correct statements of law, the challenged instructions did no more than highlight the legal difference between murder and manslaughter. A reasonable jury would still be aware that the Commonwealth

---

[8] Petitioner objects to three instructions given by the trial Judge. The first charge was "[t]he difference between Murder and Manslaughter is that to be considered Murder, the unlawful killing must have been done with malice. Where an unlawful killing has been done without malice, the crime rises no higher than Manslaughter." (N.T. 5/19/99 at 75-76). The second charge was "[a]s Voluntary Manslaughter is frequently a willful act, to reduce a felonious killing to Manslaughter, it is necessary that the circumstances indicate an absence of malice." *Id*. at 80. The third instruction was "The absence of malice is the controlling element which reduces an unlawful killing to Manslaughter." *Id*.

had the burden to prove the elements of both crimes.

The Supreme Court cases that Petitioner cites in his memorandum further undermine his claim for habeas relief. While these cases do require that a conviction must be reversed when an unconstitutional jury instruction is given alongside constitutional instructions, they do not assist Petitioner with his claim that the instructions at his trial were unconstitutional. In *Francis v. Franklin*, 471 U.S. 307 (1985), the trial court incorrectly instructed the jury that it was mandatory that they infer intent from certain actions of the Defendant.[9] The "mandatory presumption" in *Franklin* relieved the prosecution of its burden because it only had to prove certain "predicate facts" instead of actually proving intent to commit the crime at issue. *Id*. at 317. In the present case, no such burden shifting took place because, as stated above, the elements of murder and voluntary manslaughter and the Commonwealth's responsibility to prove all elements were clearly and correctly stated.

Petitioner relies strongly on *Stromberg v. California*, 283 U.S. 359 (1931), in support of his position. *Stromberg* involved a Due Process challenge to three separate clauses in a California statute criminalizing certain types of flag displays.[10] *Id*. The jury returned a "general verdict" that did not specify the grounds for the conviction. *Id*. at 367-68. The Court overturned the *Stromberg* conviction because, after finding one of the clauses was unconstitutional, it was impossible to

---

[9] The *Franklin* trial judge instructed the jury that "[t]he acts of a person of sound mind and discretion are presumed to be the product of the person's will...[a] person of sound mind and discretion is presumed to intend the natural and probable consequences of his acts but the presumption may be rebutted. A person will not be presumed to act with criminal intention but the trier of facts...may find criminal intention upon a consideration of the words, conduct, demeanor, motive and all other circumstances connected with the act for which the accused is prosecuted." *Franklin,* 471 U.S. at 311-12.

[10] The statute at issue in *Stromberg* read "[a]ny person who displays a red flag, banner or badge or any flag...of any color or form...in any public place or in any meeting place or public assembly, or from or on any house, building or window as a sign, symbol or emblem of opposition to organized government or as an invitation or stimulus to anarchistic action or as an aid to propaganda that is of a seditious character is guilty of a felony." *Stromberg*, 283 U.S. at 361.

determine whether the jury found the Petitioner guilty of violating the unconstitutional clause. *Id*. at 368-69. *Stromberg* is inapplicable because both the murder and manslaughter statutes in the instant case are constitutional. Petitioner's reliance on *Cage v. Louisiana*, 498 U.S. 39 (1990), is similarly misplaced. The Court in *Cage* disapproved of the trial court's attempt to define reasonable doubt as "substantial" and "grave" doubt. *Cage*, 498 U.S. at 41. The trial court in Petitioner's case correctly defined reasonable doubt and instructed the jury that the Commonwealth's burden for murder and manslaughter was clearly "reasonable doubt." Any objection Petitioner's trial counsel would have made to the proof of malice instruction would be baseless at trial. Consequently, such an objections cannot support a *Strickland* claim after trial.

## **CONCLUSION**

Based on the aforementioned, Petitioner has failed to establish that the Pennsylvania Superior Court unreasonably applied established Supreme Court law in finding that his trial counsel was constitutionally effective. Therefore, Petitioner's motion for a *writ of habeas corpus* is DENIED. An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BRUCE FRAZIER,** | : | |
| Petitioner, | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 02-1472 |
| | : | |
| **JEFFREY BEARD, et al.** | : | |
| Respondents. | : | |

## ORDER

**AND NOW,** on this 30th day of November, 2005, upon consideration of Petitioner Bruce Frazier's Petition for *Habeas Corpus* relief (Doc. 1), Respondents' Memorandum in Opposition (Doc. 17), the Report and Recommendation of United States Magistrate Judge Diane M. Welsh (Doc. 18), Petitioner's Objections to Judge Welsh's Report (Doc. 20), and Respondents' Reply to Petitioner's Objections (Doc. 21), and having conducted a *de novo* review of the record, **IT IS HEREBY ORDERED AND DECREED** that:

1. The Report and Recommendation is **APPROVED and ADOPTED,**

2. The Petition for a Writ of *Habeas Corpus* is **DENIED,** and

3. A certificate of Appealability is **NOT GRANTED**.

BY THE COURT:

/S/ Petrese B. Tucker
_____
**Hon. Petrese B. Tucker, J.**

15